CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
MAY 10 2013
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 3:12CR00032 |
|---|---|---|
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| SHAD DIXON, | ) | |
| Defendant. | ) | By: B. WAUGH CRIGLER |
| | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury returned a multiple-count Indictment charging defendant in **Count One** with knowingly and intentionally conspiring to possess with intent to distribute, and to distribute, fifty (50) or more kilograms of marijuana, a Schedule I controlled substance in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Sections 846. Defendant was not charged in Counts Two and Three of the indictment. Defendant acknowledged his initials and signature to a plea agreement with the government which has been filed with the court. The agreement called for the defendant to plead guilty to Count One.

On May 7, 2013, a plea hearing was conducted before the undersigned. The defendant was placed under oath and testified that his full legal name is Shad William Dixon, he was born on February 11, 1971, and his education includes a couple years of junior college. The defendant stated that he can read, write, and understand the English language. The defendant further stated that he was fully aware of the nature of the charges against him and the consequences of pleading guilty to those charges. The defendant informed the court that he was not under the influence of alcohol, drugs, or medicine of any sort, and that he suffered no condition that impaired his ability to understand what the court was saying or the nature of the proceedings.

The defendant testified that he had received a copy of the Indictment pending against him, and that he had fully discussed the charges therein and any defenses thereto, and his case in general, with his counsel. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty. The defendant testified that he understood that the offense in Count One is a felony, and if his plea is accepted, he will be adjudged guilty of that offense. The defendant agreed that he would not be considered a prevailing party with regard to these charges. The defendant acknowledged that the plea agreement only binds the United States Attorney's Office for the Western District of Virginia and no other state or federal prosecutor or enforcement agency.

The defendant acknowledged that the maximum statutory penalty is a $1,000,000 fine and/or imprisonment for a term of twenty years, together with a term of supervised release, and that there is no minimum term of imprisonment. The defendant was informed that parole has been abolished, and that if he is sentenced to prison, he will not be released on parole, but on supervised release, a violation of which could result in additional incarceration. The government is seeking forfeiture of $30,000.00 in U.S. Currency. The defendant agreed to cooperate fully with the forfeiture of property and to remit these funds by five (5) days prior to sentencing. The defendant was informed that the forfeiture will survive his death or disability and cannot be abated by anything. The defendant testified that he had waived any right to appeal issues of proportionality under *United States v. Austin* and agreed that he would not attempt to attack the forfeiture as an excessive fine or punishment. The government is not seeking restitution and the defendant stated that he abandoned any interest in the items seized as evidence in the prosecution of this case. Finally, the defendant testified that he understood that, upon conviction, he will be required to pay a mandatory assessment of $100 per felony count of conviction.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the

sentence in a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines. The defendant stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him, or any recommendation by the government, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant acknowledged it was agreed that the 2012 edition of the United States Sentencing Guidelines Manual is applicable. The defendant further acknowledged that, in the Plea Agreement, it had been stipulated that Sentencing Guidelines 2D1.1(a)(5) & (c), 2D1.1(b)(16), and 3B1.2 (two-level reduction) are applicable to his conduct, provided that he meets the criteria at the time of sentencing. The parties reserved the right to argue whether other guidelines, including a four-level reduction under 3B1.2, should apply to defendant's case. The defendant also stated that he understood that even if he fully cooperates with law enforcement, the government is under no obligation to file a motion to reduce his sentence for substantial assistance, and if the government makes the motion, it is up to the court to determine how much of a departure, if any, should be made. The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the Plea Agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and, if applicable, the government will move that he be

3

given an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant agreed that he had knowingly and voluntarily waived his rights to request or receive any records pertaining to the investigation or prosecution of his case, including any records that may be sought under the Freedom of Information Act or the Privacy Act of 1974. The defendant agreed he would submit a financial statement, if called upon to do so. He further agreed that from the time of his signing of the plea agreement, or the date he signs the financial statement, whichever is earlier, he would not convey anything of value without authorization from the government. The defendant acknowledged his monetary obligations under the plea agreement, which calls for such to be due immediately and subject to immediate enforcement.

The defendant acknowledged that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty and persist in that plea;
2. The right to a speedy and public jury trial;
3. The right to assistance of counsel at that trial and in any subsequent appeal;
4. The right to remain silent at trial;
5. The right to testify at trial;
6. The right to confront and cross-examine witnesses called by the government;
7. The right to present evidence and witnesses in his own behalf;
8. The right to compulsory process of the court;
9. The right to compel the attendance of witnesses at trial;
10. The right to be presumed innocent;
11. The right to a unanimous guilty verdict; and
12. The right to appeal a guilty verdict.

The defendant testified that he understood that, under the terms of the agreement, he was waiving his rights to appeal, except that he was not waiving his right to appeal or have his attorney file a notice of appeal as to any issue which cannot by law be waived. The defendant acknowledged that he had agreed to waive his right to collaterally attack his conviction or

sentence in the case, except to the extent such attack is based on ineffective assistance of counsel or a constitutional defect in the jurisdiction of the court. The defendant was informed that, if he chose to appeal any issue which had been waived, the government could treat such as a breach of the Plea Agreement and exercise all of its remedial rights under the Plea Agreement, including the right to recharge him.

The defendant testified that he understood that he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. The defendant stated that he was satisfied with the advice and representation given to him in this case by both his local and foreign counsel, and that he believed the representation had been effective. The defendant asked the court to accept his plea of guilty to Count One.

**THE GOVERNMENT'S EVIDENCE**

The defendant and the Government agreed to a Stipulation of Facts. The Stipulation of Facts having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

The offenses described below occurred within the Western District of Virginia. The following statement of facts briefly summarizes the facts and circumstances surrounding the defendant's criminal conduct. This statement does not contain all information obtained during the investigation or all facts applicable to an accurate presentence investigation report and sentencing guidelines calculation.

**Background**

On October 15, 2012, Trooper Clint Craft of the Oklahoma Highway Patrol conducted a traffic stop on an RV in Sequoyah County, Oklahoma. Trooper Craft initiated the traffic stop on the RV for exceeding the posted speed limit and a partially-obstructed license plate. Trooper Craft identified the driver of the RV as Defendant Shad Dixon (hereinafter "DIXON") and determined the driver was the sole occupant of the RV. Based on DIXON's nervous behavior, among other things, Trooper Craft obtained consent to search the RV and subsequently seized packaged marijuana with a gross weight of 73.7 kilograms, which had been concealed in the undercarriage of the RV (the "Marijuana"). DIXON stated that he obtained the Marijuana from his co-conspirator, Defendant David Frank Patterson (hereinafter, "Patterson"), who was paying him to deliver the Marijuana from California to Charlottesville, Virginia, where DIXON would tender the Marijuana to Patterson to sell locally. DIXON has known Patterson for a number of years, and on or before August 18, 2011, DIXON agreed with Patterson to begin driving marijuana from California to Charlottesville, Virginia, where Patterson would then sell the marijuana to his contact there.

Between September of 2011 and October of 2012, Patterson hired Dixon to deliver marijuana from California to Charlottesville, Virginia on four occasions. Dixon was paid a total sum of approximately $30,000.00 for the first three of the four trips. Although Patterson had agreed to pay Dixon for the fourth trip as well, Dixon never received payment for that trip because the operation was intercepted on October 15, 2012.

**Controlled Delivery**

After his arrest in Oklahoma, DIXON agreed to cooperate in making a controlled exchange of the Marijuana to Patterson in Charlottesville, Virginia, where Patterson was expecting delivery. On October 16, 2012, at approximately 8:15 p.m., Drug Enforcement Administration agents (hereinafter, "Agents"), led by Special Agent Jason Alznauer, outfitted DIXON with a concealed transmitting/recording device, and at approximately 9:30 p.m., DIXON met with Patterson in Charlottesville, Virginia. At this meeting, Patterson told DIXON that his marijuana customers did not want to do the transaction at night and that they would complete the transaction the following morning. Patterson asked DIXON to meet him at the same location the following morning to deliver the Marijuana.

On October 17, 2012, at approximately 8:22 a.m., DIXON met with Patterson at the agreed upon location in Charlottesville, Virginia, for the purpose of delivering the Marijuana to Patterson. At approximately 8:36 a.m., after the exchange had occurred, Patterson drove away from the meeting location with the Marijuana. Shortly thereafter, Agents stopped Patterson and arrested him, at which time the Marijuana was recovered from Patterson's vehicle. A laboratory test later revealed that the Marijuana had a net weight of approximately 55.076 kilograms.

Patterson gave a statement to Agents in which he stated that all of the Marijuana in the October of 2012 described above was to be purchased by someone named "Chris" at 2608 Rio Mills Road in Earlysville, Virginia (hereinafter, the "Residence"), which Agents identified as Bishop's home based on a search of public records. Patterson acknowledged having interacted with "Chris" on multiple occasions. Agents showed Patterson a photograph of Bishop, and Patterson identified Bishop as the "Chris" that was to purchase the Marijuana. At approximately

12:00 p.m. on October 17, 2012, Patterson made a monitored and recorded telephone call to Bishop's cellular telephone number. During the conversation, Bishop directed Patterson to proceed to the Residence and to enter the Residence inside with a hidden garage door opener if Bishop was not present. Patterson had previously agreed with Bishop to sell the Marijuana to Bishop for U.S. Currency after arriving at the Residence.

At around 1:52 p.m., Agents executed a search warrant at the Residence and arrested Bishop. During a search of the Residence, Agents recovered, among other things, over $389,000.00 in U.S. currency, packaging materials, and a large set of digital scales. Bishop maintained a storage room attached to his home and accessed through the garage. In the storage room, there was a storage freezer, a large safe containing a large portion of the bulk cash referenced above, and approximately one kilogram of packaged marijuana.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

(1) The defendant is fully competent and capable of entering into a plea agreement and making an informed plea;

(2) The defendant is aware of the nature of the charges and the consequences of his plea;

(3) The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

(4) The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One of the Indictment. The undersigned DIRECTS that a presentence report be prepared. The undersigned RECOMMENDS that the proposed order of forfeiture be entered at the appropriate time. A sentencing hearing hereby is scheduled for September 17, 2013 at 2:00 p.m. before the presiding District Judge in Charlottesville.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within fourteen days (14) after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within fourteen days could waive appellate review. At the conclusion of the fourteen-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge. The Clerk is hereby directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ [signature]
United States Magistrate Judge

5-10-2013
Date